UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

WILLIAM D. FUNDERBURGH, III,

    Plaintiff,

    v.      CAUSE NO. 3:23-CV-93-DRL-MGG

KUENZLI *et al.*,

    Defendants.

OPINION AND ORDER

William D. Funderburgh, III, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Funderburgh alleges that, on October 8, 2021, he submitted a health care request indicating that he was having trouble urinating and the Flomax prescription he was taking wasn't working.[1] He was seen by a member of the medical staff on October

---

[1] Mr. Funderburgh intended to raise this issue sooner, at his September 14, 2021, chronic care visit with Kim Myers. Nurse Myers, however, was rushing Mr. Funderburgh and seemed generally uninterested in what he said, so the issue wasn't raised.

27, 2021, and he was told that he would be scheduled for a catheterization soon. On November 9, 2021, he submitted a request asking when the appointment would happen. On November 15, 2021, a catheterization was performed at 2:00 p.m. He was in extreme pain during the procedure and throughout the next hour. There was blood in his urine. He begged Nurse Ashley Wilson to remove the catheter, but she said he needed to wait until the next day and what he was experiencing was normal.

Around 7:30 p.m., Mr. Funderburgh talked with Nurse Joyce Kline.[2] He told her that he continued to bleed, and his pain wasn't manageable. She wouldn't do anything without talking with the doctor, and the doctor was unavailable for hours. Late into the evening, she removed the catheter. After bleeding for forty-five minutes to an hour, Mr. Funderburgh was transferred to Howard Regional Hospital.

In medical cases, the Constitution is violated only when a defendant is deliberately indifferent to an inmate's serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478

---

[2] Nurse Joyce Kline isn't listed as a defendant in the caption of Mr. Funderburgh's complaint, but he has included her name as a defendant in the body of his complaint.

(7th Cir. 2005) (quotations, brackets, and citation omitted). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that reflects "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

That said, "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Id.* Inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and quotations omitted). "[W]hether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016).

Here, Mr. Funderburgh's only allegations against Nurse Ashley Wilson are that she refused to remove the catheter the evening it was inserted and that she told him what he was experiencing was normal. The facts don't permit a plausible inference that Nurse Ashley Wilson failed to exercise her medical judgment. Though her actions may equate to negligence or malpractice, they don't rise to the level of deliberate indifference. Therefore, he may not proceed against Nurse Ashley.

Mr. Funderburgh's allegations against Nurse Joyce are that he told her that he continued to bleed, and his pain wasn't manageable. She, however, wouldn't do anything without talking with the doctor, and the doctor wasn't immediately available. Nurse Joyce did remove the catheter later that evening, and when Mr. Funderburgh continued to have bleeding following the removal of the catheter, he was sent to the hospital. These allegations don't permit a plausible inference that Nurse Joyce acted with deliberate indifference to Mr. Funderburgh.

Once Mr. Funderburgh arrived at Howard Regional Hospital, another catheter was inserted. After several hours of bleeding and pain, Dr. Peele ordered a CT scan which showed his bleeding and pain were due to unsuccessful catheterizations. He spent two days in the hospital.

Mr. Funderburgh has sued Dr. Peele. "[T]o state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). "The under-color-of-state-law element means that § 1983 does not permit suits based on private conduct, no matter how discriminatory or wrongful." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (quotations and citation omitted). The facts don't permit an inference that Dr. Peele was acting under color of law.[3] Therefore, he won't be granted leave to proceed against Dr. Peele.

---

[3] To the extent that Mr. Funderburgh may have a state law claim against Dr. Peele, this court won't exercise jurisdiction over that claim in the absence of a federal claim. *See Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 513 (7th Cir. 2010) ("Ordinarily, when a district court dismisses the federal claims conferring original jurisdiction prior to trial, it relinquishes supplemental jurisdiction over any state-law claims under 28 U.S.C. 1367(c).").

When released from the hospital, Mr. Funderburgh was housed in a dorm used for quarantine because the infirmary was full. He continued to bleed, and correctional staff contacted the medical department, which provided gauze. Here, Mr. Funderburgh identifies neither a particular defendant that he believes violated his rights nor facts showing deliberate indifference to his suffering. Therefore, he won't be permitted to proceed on a claim regarding his medical care while housed in the quarantine dorm.

Mr. Funderburgh was unable to shower until the next day due to a lockdown. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). To state a claim under the Eighth Amendment, the prisoner must show both that the deprivation was sufficiently serious and that the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Mr. Funderburgh has indicated who denied him a shower, but being denied a shower for a single day due to a lockdown doesn't rise to the level of a constitutional violation. Therefore, he may not proceed on this claim.

He continued to have problems and sought help from Dr. Kuenzli and other unnamed medical staff. He saw Dr. Kuenzli on November 22, 2021. Mr. Funderburgh reports that Dr. Kuenzli wasn't concerned about Mr. Funderburgh's pain or bleeding. He provided additional Tylenol and some adult diapers. The facts don't permit an inference

that Dr. Kuenzli failed to use his medical judgment in making his treatment decisions. Therefore, he may not proceed against him on a deliberate indifference claim.[4]

At some point (it is unclear when), the urine that collected in the catheter bag looked like a black cup of coffee. On November 24, 2021, the catheter bag again filled with blood. He was in so much pain he needed assistance getting from the chow hall to his dorm. On November 25, 2021, he noticed that his penis was excreting puss. On November 27, the catheter started leaking. He again tried to get medical assistance. He was permitted to get a new catheter bag, but the nursing staff didn't provide further assistance. Mr. Funderburgh reports that nobody knew that he was supposed to have the catheter removed on November 30, 2021. He removed the catheter himself. Mr. Funderburgh doesn't mention any of the defendants in connection with these allegations. Therefore, he hasn't stated a claim based on the care he received on November 27, 2021.

This complaint doesn't state a claim for which relief can be granted. If he believes he can state a claim based on (and consistent with) the events described in this complaint, Mr. Funderburgh may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738

---

[4] Mr. Funderburgh is also suing Dr. Kuenzli because he was in charge and responsible for the supervision and training of his staff. There is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. To be held liable, a supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). The complaint doesn't permit an inference that Dr. Kuenzli facilitated, approved, condoned, or turned a blind eye to any unconstitutional actions.

(7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form, which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS William D. Funderburgh, III, until **October 26, 2023**, to file an amended complaint; and

(2) CAUTIONS William D. Funderburgh, III, that, if he doesn't respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint doesn't state a claim for which relief can be granted.

SO ORDERED.

October 2, 2023                                              *s/ Damon R. Leichty*
                                                             Judge, United States District Court